NO. 07-04-0381-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JANUARY 25, 2005


______________________________



DANNY LEE CLEMENT, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 7TH DISTRICT COURT OF SMITH COUNTY;



NO. 007-2018-03; HON. KERRY L. RUSSELL, PRESIDING


_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

 Appellant, Danny Lee Clement, appeals his conviction for possessing a controlled
substance. He pled guilty to the charge after the trial court overruled his motion to
suppress evidence. The latter decision underlies the four issues appellant urges before us. 
In effect, he contends that both his federal and state constitutional rights against being
searched without a warrant were violated. We affirm the judgment, even though the State
did not favor us with an appellee's brief. 





Background


 On June 29, 2003, Officer Billy Yates was patrolling near the American Inn motel
which was known to be an area where drugs were traded. He saw a car in the parking lot
with the engine running and a passenger sitting in the back seat. Because he knew that
drug purchasers often leave their engines running while they pick up drugs, he stopped and
asked the passenger where the driver was. The passenger pointed to a man knocking on
a motel room door. Yates then approached and spoke to the man at the door. The man
said he was there to see his friend "Danny" and a woman named "DeeDee." The latter was
allegedly the girlfriend of the man with whom the officer spoke. Furthermore, the officer
knew a prostitute named DeeDee; so, he told the man to continue knocking to see if she
would come out. At that point, the man yelled to DeeDee through the door informing her
that an officer was present. 

 DeeDee opened the door, but she was not the prostitute that the officer knew. At
that point the officer began to ask her miscellaneous questions. So too did he see
appellant (Danny) in the room and began to ask him questions. Through this period the
officer remained outside the room. Eventually, he asked appellant if he had rented the
room and, when appellant answered in the affirmative, for permission to "look" in it. 
Appellant again replied in the affirmative. 

 Upon receiving appellant's consent, the officer requested back-up. When it arrived
he proceeded to perform the search. While doing so, he looked under an up-turned ice
bucket and found what he believed to be crack cocaine. He also opened an eyeglass case
near the bed and found a razor blade, a push rod, and a metal crack pipe. Appellant was
arrested for possession of a controlled substance.

 Warrantless Search 

 In his four issues, appellant argues that the search of his room, the ice bucket, and
his eyeglass case violated the United States Constitution and the Texas Constitution and
that the search of the ice bucket and his eyeglass case also violated article 38.23 of the
Code of Criminal Procedure. (1) We address each search separately.

 We review the trial court's ruling on a motion to suppress under the standard
announced in Johnson v. State, 68 S.W.3d 644 (Tex. Crim. App. 2002) and Guzman v.
State, 955 S.W.2d 85 (Tex. Crim. App. 1997). In doing so, we give almost total deference
to the trial court's findings of historical fact and review de novo the application of the law
to the facts. Johnson v. State, 68 S.W.3d at 652-53. So too do we consider the totality of
the circumstances when determining whether consent to search was voluntarily given an
officer. Id. 

 Issue Three - Search of Room

 A search based on consent is an exception to the warrant and probable cause
requirements of our federal and state constitutions. Balentine v. State, 71 S.W.3d 763, 772
(Tex. Crim. App. 2002). However, the State must prove, by clear and convincing evidence,
that the consent was voluntary. Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App.
2000). And, in determining whether it met that burden, we consider the totality of the
circumstances. Id. 

 Here, appellant argues that the "central issue of this appeal is . . . whether the officer
had articulable reasonable suspicion that crime was occurring . . . before he attempted his
knock and talk maneuver." Irrespective of how appellant labels his contentions on appeal,
he simply characterized them below as a dispute involving whether the dialogue between
the officer and appellant was an investigation or consensual encounter. He said little if
anything about the voluntariness of the consent given to search the room. Thus, it could
be said that the issue before us was not preserved for review.

 Nonetheless, we note that under both federal and state law, an officer may approach
a citizen in a public place or knock on a door to ask questions or seek consent to search. 
State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); James v. State, 102 S.W.3d
162, 173 (Tex. App.--Fort Worth 2003, pet. ref'd). He need not have reasonable suspicion
or probable cause to do so as long as the officer does not indicate that compliance is
required. Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); Middleton v. State,
9 S.W.3d 428, 431 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Therefore, the officer
at bar was entitled to 1) knock on the motel room door, 2) ask questions of those who
responded to his knock, and 3) request consent to search the room as long as he did not
lead appellant to believe he had no right to refuse. 

 Next, appellant argues his consent was involuntary because 1) DeeDee felt
compelled to open the door after she was told that there was a police officer outside the
door, 2) the couple was sharing an intimate evening and would not have opened the door
unless they felt they had to, 3) the officer was in uniform and armed, 4) the officer called
for back-up prior to searching the room, and 5) the officer failed to tell appellant that he
could refuse the request. The fact that a person is in custody, handcuffed, or simply not
free to go does not necessarily mean consent to a warrantless search is involuntary. See
Johnson v. State, 68 S.W.3d 644, 653-54 (Tex. Crim. App. 2002); Reasor v. State, 12
S.W.3d at 818-19; Strauss v. State, 121 S.W.3d 486, 493 (Tex. App.--Amarillo 2003, pet.
ref'd); Goldberg v. State, 95 S.W.3d 345, 361 (Tex. App.--Houston [1st Dist.] 2002, pet.
ref'd), cert. denied, 540 U.S. 1190, 124 S.Ct. 1436, 158 L.Ed.2d 99 (2004). Given this, we
are hard-pressed to say that the presence of a police officer in uniform and armed ipso
facto renders consent involuntary, as appellant suggests. Nor does it when coupled with
evidence that the officer called for backup after receiving the consent. This is especially
so in view of the testimony that 1) weapons were not drawn at anytime, 2) the occupants
of the room had the option not to speak with the officer, 3) the occupants were not under
detention, and 4) the officer remained outside until receiving consent to search. Moreover,
whatever DeeDee may have felt when told that an officer was present is mere speculation;
she did not testify at the hearing. Nor does it logically follow that one's answering a knock
on the door must be deemed involuntary when told of an officer's desire to speak with the
person and the person is party to an intimate evening in a motel room. 

 Additionally, that the officer failed to inform appellant of his right to refuse consent
or remain silent does not outweigh all other circumstances of record illustrating that
appellant voluntarily consented to the search of his motel room. See Johnson v. State, 68
S.W.3d at 652-53 (stating that although an officer's failure to inform the accused that he
can refuse consent is a factor to consider, the absence of such information does not
automatically render the consent involuntary). At the very least, we find sufficient evidence
of record upon which the trial court could have concluded that appellant's consent was
indeed voluntary. Thus, we overrule issue three, involving the initial authority to search the
room in general. 

 Issues One, Two and Four - Search of Ice Bucket and Eyeglass Case 

 The remaining three issues deal with the officer's search of the up-turned ice bucket
and an eyeglass case once he gained entry into the room via appellant's consent. 
Appellant argues that searching the bucket and case exceeded the scope of consent
granted the officer. We overrule the issues.

 During the suppression hearing, appellant did not dissect the officer's action into
three different searches, i.e. the initial entry into the room, perusal of the ice bucket, and
perusal of the eyeglass case, as he does on appeal. Nor did he specifically complain about
the officer's action viz the bucket and case. Instead, he told the trial court that the issue
before it involved whether "this was an investigative detention or a consensual encounter." 
Nothing was said about the topic of exceeding the scope of consent he gave the officers. 
Consequently, the matter encompassed within issues one, two, and four were not
preserved for our review. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (the
complaints asserted on appeal must comport with those raised below, otherwise they are
waived).

 Accordingly, the judgment of the trial court is affirmed.



 Brian Quinn 

 Justice 

Do not publish.
1. The Fourth Amendment to the federal constitution and article I, §9 of the Texas Constitution are the
same in material aspects but are to be construed independently. Richardson v. State, 865 S.W.2d 944, 948
(Tex. Crim. App. 1993); Uresti v. State, 98 S.W.3d 321, 329 (Tex. App.--Houston [1st Dist. 2003, no pet.). 
When a defendant does not separately brief his claims under the federal and state constitutions, however, we
assume he claims no greater protection under the state constitution. Varnes v. State, 63 S.W.3d 824, 829
(Tex. App.--Houston [14th Dist.] 2001, no pet.). Appellant does argue here that the Texas constitution provides
greater protection with respect to the search of closed containers than the federal constitution and relies on
Autran v. State, 887 S.W.2d 31 (Tex. Crim. App. 1994) to support the proposition. Yet, Autran was a plurality
decision and, as such, does not bind us.