NO. 07-04-0381-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 25, 2005
_____

DANNY LEE CLEMENT,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 7TH DISTRICT COURT OF SMITH COUNTY;

NO. 007-2018-03; HON. KERRY L. RUSSELL, PRESIDING
_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

Appellant, Danny Lee Clement, appeals his conviction for possessing a controlled substance. He pled guilty to the charge after the trial court overruled his motion to suppress evidence. The latter decision underlies the four issues appellant urges before us. In effect, he contends that both his federal and state constitutional rights against being searched without a warrant were violated. We affirm the judgment, even though the State did not favor us with an appellee's brief.

## *Background*

On June 29, 2003, Officer Billy Yates was patrolling near the American Inn motel which was known to be an area where drugs were traded. He saw a car in the parking lot with the engine running and a passenger sitting in the back seat. Because he knew that drug purchasers often leave their engines running while they pick up drugs, he stopped and asked the passenger where the driver was. The passenger pointed to a man knocking on a motel room door. Yates then approached and spoke to the man at the door. The man said he was there to see his friend "Danny" and a woman named "DeeDee." The latter was allegedly the girlfriend of the man with whom the officer spoke. Furthermore, the officer knew a prostitute named DeeDee; so, he told the man to continue knocking to see if she would come out. At that point, the man yelled to DeeDee through the door informing her that an officer was present.

DeeDee opened the door, but she was not the prostitute that the officer knew. At that point the officer began to ask her miscellaneous questions. So too did he see appellant (Danny) in the room and began to ask him questions. Through this period the officer remained outside the room. Eventually, he asked appellant if he had rented the room and, when appellant answered in the affirmative, for permission to "look" in it. Appellant again replied in the affirmative.

Upon receiving appellant's consent, the officer requested back-up. When it arrived he proceeded to perform the search. While doing so, he looked under an up-turned ice bucket and found what he believed to be crack cocaine. He also opened an eyeglass case near the bed and found a razor blade, a push rod, and a metal crack pipe. Appellant was arrested for possession of a controlled substance.

### *Warrantless Search*

In his four issues, appellant argues that the search of his room, the ice bucket, and his eyeglass case violated the United States Constitution and the Texas Constitution and that the search of the ice bucket and his eyeglass case also violated article 38.23 of the Code of Criminal Procedure.[1]   We address each search separately.

We review the trial court's ruling on a motion to suppress under the standard announced in *Johnson v. State*, 68 S.W.3d 644 (Tex. Crim. App. 2002) and *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997).  In doing so, we give almost total deference to the trial court's findings of historical fact and review *de novo* the application of the law to the facts.  *Johnson v. State*, 68 S.W.3d at 652-53.  So too do we consider the totality of the circumstances when determining whether consent to search was voluntarily given an officer.  *Id.*

*Issue Three - Search of Room*

A search based on consent is an exception to the warrant and probable cause requirements of our federal and state constitutions.  *Balentine v. State,* 71 S.W.3d 763, 772 (Tex. Crim. App. 2002).  However, the State must prove, by clear and convincing evidence, that the consent was voluntary.  *Reasor v. State,* 12 S.W.3d 813, 818 (Tex. Crim. App.

---

[1]The Fourth Amendment to the federal constitution and article I, §9 of the Texas Constitution are the same in material aspects but are to be construed independently.  *Richardson v. State,* 865 S.W.2d 944, 948 (Tex. Crim. App. 1993); *Uresti v. State,* 98 S.W.3d 321, 329 (Tex. App.--Houston [1st Dist. 2003, no pet.). When a defendant does not separately brief his claims under the federal and state constitutions, however, we assume he claims no greater protection under the state constitution. *Varnes v. State,* 63 S.W.3d 824, 829 (Tex. App.--Houston [14th Dist.] 2001, no pet.). Appellant does argue here that the Texas constitution provides greater protection with respect to the search of closed containers than the federal constitution and relies on *Autran v. State,* 887 S.W.2d 31 (Tex. Crim. App. 1994) to support the proposition.  Yet, *Autran* was a plurality decision and, as such, does not bind us.

2000). And, in determining whether it met that burden, we consider the totality of the circumstances. *Id.*

Here, appellant argues that the "central issue of this appeal is . . . whether the officer had articulable reasonable suspicion that crime was occurring . . . before he attempted his knock and talk maneuver." Irrespective of how appellant labels his contentions on appeal, he simply characterized them below as a dispute involving whether the dialogue between the officer and appellant was an investigation or consensual encounter. He said little if anything about the voluntariness of the consent given to search the room. Thus, it could be said that the issue before us was not preserved for review.

Nonetheless, we note that under both federal and state law, an officer may approach a citizen in a public place or knock on a door to ask questions or seek consent to search. *State v. Perez,* 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); *James v. State,* 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref'd). He need not have reasonable suspicion or probable cause to do so as long as the officer does not indicate that compliance is required. *Hunter v. State,* 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); *Middleton v. State,* 9 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Therefore, the officer at bar was entitled to 1) knock on the motel room door, 2) ask questions of those who responded to his knock, and 3) request consent to search the room as long as he did not lead appellant to believe he had no right to refuse.

Next, appellant argues his consent was involuntary because 1) DeeDee felt compelled to open the door after she was told that there was a police officer outside the door, 2) the couple was sharing an intimate evening and would not have opened the door unless they felt they had to, 3) the officer was in uniform and armed, 4) the officer called

4

for back-up prior to searching the room, and 5) the officer failed to tell appellant that he could refuse the request. The fact that a person is in custody, handcuffed, or simply not free to go does not necessarily mean consent to a warrantless search is involuntary. *See Johnson v. State,* 68 S.W.3d 644, 653-54 (Tex. Crim. App. 2002); *Reasor v. State,* 12 S.W.3d at 818-19; *Strauss v. State,* 121 S.W.3d 486, 493 (Tex. App.—Amarillo 2003, pet. ref'd); *Goldberg v. State,* 95 S.W.3d 345, 361 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), *cert. denied,* 540 U.S. 1190, 124 S.Ct. 1436, 158 L.Ed.2d 99 (2004). Given this, we are hard-pressed to say that the presence of a police officer in uniform and armed *ipso facto* renders consent involuntary, as appellant suggests. Nor does it when coupled with evidence that the officer called for backup *after* receiving the consent. This is especially so in view of the testimony that 1) weapons were not drawn at anytime, 2) the occupants of the room had the option not to speak with the officer, 3) the occupants were not under detention, and 4) the officer remained outside until receiving consent to search. Moreover, whatever DeeDee may have felt when told that an officer was present is mere speculation; she did not testify at the hearing. Nor does it logically follow that one's answering a knock on the door must be deemed involuntary when told of an officer's desire to speak with the person and the person is party to an intimate evening in a motel room.

Additionally, that the officer failed to inform appellant of his right to refuse consent or remain silent does not outweigh all other circumstances of record illustrating that appellant voluntarily consented to the search of his motel room. *See Johnson v. State*, 68 S.W.3d at 652-53 (stating that although an officer's failure to inform the accused that he can refuse consent is a factor to consider, the absence of such information does not automatically render the consent involuntary). At the very least, we find sufficient evidence

5

of record upon which the trial court could have concluded that appellant's consent was indeed voluntary. Thus, we overrule issue three, involving the initial authority to search the room in general.

*Issues One, Two and Four - Search of Ice Bucket and Eyeglass Case*

The remaining three issues deal with the officer's search of the up-turned ice bucket and an eyeglass case once he gained entry into the room via appellant's consent. Appellant argues that searching the bucket and case exceeded the scope of consent granted the officer. We overrule the issues.

During the suppression hearing, appellant did not dissect the officer's action into three different searches, *i.e.* the initial entry into the room, perusal of the ice bucket, and perusal of the eyeglass case, as he does on appeal. Nor did he specifically complain about the officer's action *viz* the bucket and case. Instead, he told the trial court that the issue before it involved whether "this was an investigative detention or a consensual encounter." Nothing was said about the topic of exceeding the scope of consent he gave the officers. Consequently, the matter encompassed within issues one, two, and four were not preserved for our review. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (the complaints asserted on appeal must comport with those raised below, otherwise they are waived).

Accordingly, the judgment of the trial court is affirmed.

Brian Quinn
Justice

Do not publish.

6